IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH MOORE                    :
                                :          CIVIL ACTION
        v.                      :
                                :          NO. 20-5920
LOWER FREDERICK TOWNSHIP,       :
ET AL.                          :

**MEMORANDUM**

**SURRICK, J.**                                              **MARCH 4, 2022**

Presently before the Court is a Motion to Dismiss filed by Defendants Lower Frederick

Township and Police Chief Paul E. Maxey.  Defendants move to dismiss Count I (Hostile Work

Environment, Retaliation, and Retaliatory Reference) in violation of 42 U.S.C. § 1981 pursuant

to Rule 12(b)(1) for lack of jurisdiction, and Count I along with the remaining counts (Count II,

First Amendment Retaliation; Count III, Pennsylvania Whistleblower Law Violations; Count IV,

42 U.S.C. § 1983 defamation and state law defamation; and Count IV, Title VII) pursuant to

Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  For the following

reasons, the Motion will be granted in part and denied in part.

**I.    INTRODUCTION**

Plaintiff Joseph Moore, a white male, alleges he was unlawfully terminated by his

employer for complaining about racist and sexist comments and actions by his supervisor, Chief

Maxey.  (Am. Compl. ¶ 1, ECF No. 12.)  Plaintiff was a police officer hired by Defendant Lower

Frederick Township.  (*Id.* ¶ 11.)  Defendant Chief Maxey was, at all relevant times, Chief of

Police for the Township.  (*Id.* ¶ 8.)  Plaintiff alleges that the Township's Police Department

consists of four to five officers, including Chief Maxey.  (*Id.* ¶ 13.)  According to Plaintiff, Chief

Maxey oversees scheduling, micromanages police officers, and is involved in all meaningful operational and police-personnel decision-making.  (*Id.* ¶ 16.)

During the year or so that Plaintiff was employed by the Township, Chief Maxey made many racist, sexist, and discriminatory comments.  (*Id.* ¶ 18.)  One such comment included calling Plaintiff's sister a "traitor" to the United States for converting to Islam.  (*Id.*)  Plaintiff alleges that Chief Maxey "regularly degraded a former female police officer . . .  by commenting that he should not have hired a woman, would not hire any more women, and that women should not be police officers."  (*Id.*)  Plaintiff also alleges that Chief Maxey engaged in unlawful actions and directives such as requiring ticket/arrest quotas, which he referred to as "required contacts," using excessive force and offensive name calling, and making sexist and derogatory remarks against a nonviolent recidivist offender.  (*Id.* ¶ 20.)  Plaintiff avers that the Township has been on notice of Chief Maxey's behavior for years because of a prior federal lawsuit initiated by a former police officer.  *See Messenger v. Maxey et al.*, No. 10-4940 (E.D. Pa. filed Sept. 22, 2010).

Plaintiff alleges that he told Chief Maxey his ticket quota requests were illegal, and that Plaintiff took offense to Chief Maxey's discriminatory comments and actions "at least 8-10 times during his 1-year period of employment."  (*Id.* ¶ 24.)  When Plaintiff was more vocal about his opposition to Chief Maxey's racist and sexist comments, Chief Maxey yelled at Plaintiff, made disparaging comments and demeaning directives toward Plaintiff, and implemented "absurd discipline" against Plaintiff.  (*Id.* ¶¶ 25, 26.)

Chief Maxey also allegedly failed to supply officers with sufficient and proper equipment for the job.  (*Id.* ¶ 27.)  As such, Plaintiff used a magazine pouch that he found at the station because it was the only one that would fit his particular gear.  (*Id.*)  Upon seeing the pouch

Plaintiff was using, Chief Maxey told Plaintiff that the silver snaps on the pouch were gaudy and that he should not have worn it.  (*Id.*)  Chief Maxey then terminated Plaintiff's employment with the Township, purportedly because of the pouch.  (*Id.*)  Plaintiff then sought work in other police precincts but was declined "because of false negative statements made by [Chief Maxey and/or the] Township" about him.  (*Id.* ¶ 28.)

Based on these allegations, Plaintiff filed this Complaint against the Township and Chief Maxey, in his official and individual capacity, for the following counts and claims:  Count I: Violations of 42 U.S.C. §§ 1981 and 1983 for Hostile Work Environment, Retaliation, and Retaliatory References; Count II: First Amendment Violations for Retaliation pursuant to 42 U.S.C. § 1983; Count III: Violations of the Pennsylvania Whistleblower Law for retaliation; Count IV: Defamation under both 42 U.S.C. § 1983 and Pennsylvania state law; Count V: Violations of Title VII for Hostile Work Environment, Retaliation, and Retaliatory References. (*Id.* ¶ 30-50.)  Plaintiff also requests punitive damages against both defendants.  Defendants now move to dismiss all counts in the Complaint.[1]  (ECF No. 8.)

## II.    LEGAL STANDARDS

Defendants move to dismiss Count I for violations of Section 1981 pursuant to Rule 12(b)(1) for lack of standing and for violations of both Section 1981 and 1983 pursuant to Rule 12(b)(6) for failure to state a claim.  Defendants move on the remaining Counts (Counts II through V) pursuant to Rule 12(b)(6) as well.

---

[1] Defendants filed their initial Motion to Dismiss the Complaint on January 24, 2021. Subsequently, Plaintiff filed an Amended Complaint to incorporate his claims under Title VII. Thereafter, a stipulation was agreed to, and approved by the Court, that the original Motion to Dismiss should be treated as a Motion to Dismiss Plaintiff's First Amended Complaint.  Pursuant to the stipulation, the parties also submitted supplemental briefing relevant to Plaintiff's Title VII claims to be considered as part of the Motion.  Therefore, this Motion, and all accompanying briefs and papers submitted, is considered a Motion to Dismiss the First Amended Complaint.

**A.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A complaint has facial plausibility when there is enough factual content 'that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  When considering a motion to dismiss, the Court must accept as true all factual allegations in the plaintiff's complaint and construe the facts alleged in the light most favorable to the plaintiff.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See*, *id*. at 211.  Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . ." *Iqbal*, 556 U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556).

**B.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks

subject-matter jurisdiction to hear a claim.  *See* Fed. R. Civ. P. 12(b)(1).  Courts are also

"obligated to raise the issue of standing *sua sponte*."  *Frempong v. Nat'l City Bank of India*, 452

Fed. App'x 167, 170 (3d Cir. 2011) (citing *FOCUS v. Allegheny County Court of Common*

*Pleas*, 75 F.3d 834, 838 (3d Cir. 1996)).

       A Rule 12(b)(1) motion can be reviewed as either a facial or a factual attack on the court's

subject matter jurisdiction.  Such a motion is by definition a facial attack when it occurs, as is the

case here, before a defendant has answered the complaint.  *See Constitution Party of Pennsylvania*

*v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (citing *Mortensen v. First Federal Sav. and Loan*

*Ass'n*, 549 F.2d 884, 892 n.17 (3d Cir. 1977) ("A factual jurisdictional proceeding cannot occur

until plaintiff's allegations have been controverted.")).  According to the Third Circuit, a facial

attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter

jurisdiction of the court because, for example . . . there is no indication of a diversity of citizenship

among the parties, or because some other jurisdictional defect is present."  *Aichele*, 757 F.3d at

358.

       A facial attack requires the same standard of review as a 12(b)(6) motion.  When

reviewing a facial attack, "the court must only consider the allegations of the complaint and

documents referenced therein and attached thereto, in the light most favorable to the

plaintiff."  *In re Schering Plough Corp.,* 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United*

*States,* 220 F.3d 169, 176 (3d Cir.2000)) (internal quotation marks omitted).

## III.   DISCUSSION

       Defendants bring this Motion seeking dismissal of all the counts in Plaintiff's complaint.

The order of analysis and disposition of this motion is as follows: (A) Count I: Section 1981 and

1983 claims against the municipal defendant only – both of these claims will be dismissed; (B)

Count II: First Amendment Retaliation pursuant to Section 1983 against Chief Maxey in his individual capacity – this claim is dismissed without prejudice; (C) Count III: Pennsylvania Whistleblower Law – this claim survives the Motion to Dismiss; (D) Count IV: Defamation pursuant to Section 1983 and Pennsylvania state law – Section 1983 defamation will be dismissed without prejudice and state law defamation will be dismissed with prejudice to the Township only, pursuant to the Political Subdivision Tort Claims Act, and without prejudice to Chief Maxey in his official and individual capacity; (E) Count I & V: Section 1981 against Chief Maxey in his individual capacity and Title VII – each of these claims survive the Motion to Dismiss; and (F) Punitive Damages – punitive damages will be dismissed against the municipal defendant and remain against Chief Maxey individually.

### A.    Count I: *Monell* Claims pursuant to 18 U.S.C. §§ 1981 and 1983[2]

Plaintiff's Amended Complaint asserts claims under both Sections 1981 and 1983, naming only Section 1981 explicitly, but clarifying: "[t]o the extent that this Court addresses or determines that part or all of Plaintiff's Claims in this Count of his Complaint must be pursued through 42 U.S.C. § 1983, Plaintiff brings such claims under § 1983." Plaintiff also makes the caveat that he is "pursuing claims against the individual herein in his individual capacity." The Section 1981 claim asserted against Chief Maxey will be addressed in conjunction with Plaintiff's Title VII claims, in Section III(E) below. Plaintiff's Section 1981 and 1983 claims against the municipal defendant will be addressed in this section.

#### 1.    *Section 1981 Claims*

Plaintiff's Section 1981 claims against the Township and Chief Maxey in his official

---

[2] The Complaint states the cause of action for Count I as occurring under 42 U.S.C. § 1981 but includes a footnote stating that Plaintiff is also pursuing any applicable liability under § 1983.

capacity must be dismissed.  The Third Circuit has made it clear that while Section 1981 creates

rights, Section 1983 provides the exclusive remedy for enforcement against state actors.

*McGovern v. City of Phila.*, 554 F.3d 114, 116, 121 (3d Cir. 2009).   Therefore, "a private cause

of action cannot be asserted against a municipal [actor] for a violation of [Section] 1981."  *Perez*

*v. Lebron*, 2021 WL 2255852, at *3 (E.D. Pa. June 3, 2021) (quoting *Lande v. City of Bethlehem*,

457 F. App'x 188, 193 (3d Cir. 2012)).  Accordingly, any Section 1981 claims against the

municipal defendant will be dismissed.

                    2.     *Section 1983 Claims*

        Section 1983 provides a remedy for constitutional deprivations perpetrated by state

actors, *McGovern*, 554 F.3d at 116, 121, but only after proving that the municipality itself

supported the constitutional violation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-95

(1978).  Thus, there are only two avenues by which municipalities may be liable under Section

1983: (1) policy or custom, or (2) failure to train.  *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706

F.3d 227, 237 (3d Cir. 2013) (citation omitted); *City of Canton v. Harris*, 489 U.S. 378, 387

(1989).  In this case, the Amended Complaint fails to support municipal liability based on either

theory.  Therefore, the Motion will be granted as to this claim.

                    i.     Policy or Custom

        Section 1983 liability may attach to a municipality when there is an "execution of [the]

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may be fairly said to represent official policy" which causes plaintiff's injury.  *Monell*, 436 U.S.

at 694.  A plaintiff alleging a *Monell* claim against a municipality "must identify a custom or

policy and specify what exactly that custom or policy was."  *Thomas v. City of Chester*, No. 15-

3955, 2016 U.S. Dist. LEXIS 36681, at *3 (E.D. Pa. Mar. 21, 2016) (citing *McTernan v. City of*

*York*, 564 F.3d 636, 658 (3d Cir. 2009)).  Here, Plaintiff does not state whether he is basing

liability on a policy or custom.  Plaintiff simply alleges that the township "lacks any hierarchy to

effectively escalate complaints or concerns," "knowingly permits [Chief Maxey] to operate in

any fashion, resulting in [Chief Maxey] actually being the policy maker and establisher of

customs and practices," and "ratifies all misconduct engaged in by [Chief Maxey]."  (Am.

Compl. ¶ 29).  A *Monell* claim is insufficiently pled where "[it] fails to identify any *specific*

custom or policy, but instead alleges that the policies were 'insufficient' in a generic way."  *Id.* at

\*4 (emphasis added).  Without alleging a clear policy or custom or any facts to substantiate his

conclusory assertions, Plaintiff cannot establish the requisite causal link between a policy or

custom and his constitutional violation.

Furthermore, to establish that an official policy existed, Plaintiff must allege that it was

made by a final policymaker.  *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.

1990), *superseded in part by statute on other grounds* (quoting *Pembaur v. City of Cincinnati*,

475 U.S. 469, 481 (1986)) (policies are created when a "'decisionmaker possess[ing] final

authority to establish municipal policy with respect to the action' issues an official proclamation,

policy, or edict.").  "[W]hether a particular official has 'final policy making authority' is a

question of state law."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality

opinion).

Here, the only policymaker identified in the Amended Complaint is Chief Maxey.  The

Third Circuit has noted that "as a matter of Pennsylvania state law, a township police chief is not

a final policymaker."  *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010)

(citing 53 Pa. Stat. § 66902).  Rather, Second Class Townships, including Lower Frederick

Township, are governed and supervised by a board of supervisors.  *See* 53 Pa. Stat. § 65601.  A

federal court "would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Praprotnik*, 485 U.S. at 126. There has been no indication that the Township officially delegated its authority to another decisionmaker such as Chief Maxey, or that his decisions were no longer subject to the board of supervisors' review. "Simply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010) (quoting *Praprotnik*, 485 U.S. at 130). A police chief does not have final policy making authority in a Pennsylvania township and, as such, Chief Maxey cannot be a final policymaker sufficient to incur *Monell* liability.

Viewing the facts in the light most favorable to the Plaintiff, he has failed to specifically identify a policy or custom that caused his injuries and failed to allege a final policymaker. Accordingly, the Amended Complaint does not outline a sufficient basis for a *Monell* claim based on policy or custom.

ii.   Failure to Train

A Section 1983 claim may also be sustained against a municipality based upon a failure to train theory, but only when the failure to train is the result of a purposeful decision that "reflects deliberate indifference to constitutional rights." *Harris*, 489 U.S. at 387-89, 392. "[I]n order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999); *Bilal v. Colwyn Borough*, No. 14-5438, 2017 U.S. Dist. LEXIS 136643, at *28 (E.D. Pa. Aug. 25, 2017).

The Amended Complaint makes boilerplate assertions that the Township "fails to engage in oversight of its police department," "fails to properly supervise or train its Chief and other police personnel," and "simply settles or attempts to conceal complaints by police officers made through legal means without disciplining or educating [Chief Maxey]." (Am. Compl. ¶ 29.) These allegations do not demonstrate that the policymakers knew the employees would confront a particular situation that they purposefully decided not to train on. *Harris*, 489 U.S. at 387; *Carter*, 181 F.3d at 357.

Furthermore, Plaintiff does not allege sufficient facts that establish a causal link between the failure to train and his constitutional violation. Liability for failure to train only attaches if the deficiency in training is the proximate cause of the constitutional injury. *See Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (citing *Canton*, 489 U.S. at 391). A plaintiff "must identify a failure to provide specific training that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Hatfield v. Berube*, 714 Fed. App'x 99, 103 (3d Cir. 2017) (quoting *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)). Plaintiff has not alleged any specific training which failed or was missing and resulted in his alleged injuries.

For all of the foregoing reasons, the facts alleged in the Amended Complaint are insufficient to establish municipal liability under *Monell* on the basis of failure to train. Defendants' Motion will be granted as to the Section 1983 claims against the Township.

### C.    Count II: Section 1983 First Amendment Retaliation Claims

For the reasons explained in Section I(A)(ii), *supra*, any Section 1983 claims against the Township are dismissed. We now analyze the Section 1983 First Amendment Retaliation claims

against Chief Maxey, which will be dismissed without prejudice.  While Defendants also raise a defense of qualified immunity on this count, we need not decide that issue at this juncture, as the count is being dismissed.

When public employees speak on conditions of their employment, they are entitled to First Amendment protections pursuant to Section 1983 only when: (1) in making it, the employee spoke as a private citizen, (2) the statement involved a matter of public concern, and (3) the government employer lacked adequate justification for differential treatment of the employee relative to any other member of the general public.  *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006).  The key question in determining whether the employee is speaking as a private citizen is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."  *Lane*, 573 U.S. at 239-40 ("[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech."); *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 179 (3d Cir. 2015) (citing *Lane v. Franks*, 573 U.S. 228, 238 (2014)) ("the proper framing of the question is whether the [speech] [was] within [the public employee's] ordinary job duties . . ., not whether [the speech] concerned or [was] related to those duties.").

Here, although Plaintiff's speech was clearly related to his job, Plaintiff has not alleged enough facts to demonstrate that he was speaking as a private citizen, rather than as an employee pursuant to his job duties, when he made the complaints to Chief Maxey.  The Amended Complaint only asserts that Plaintiff spoke as a "citizen and about matters of public concern." (Am. Compl. ¶ 34.)  Simply restating the law, without specific facts to substantiate the claim, is not enough to survive a motion to dismiss.  *Cf. Flora*, 776 F.3d at 175-76.  Therefore, this count

will be dismissed without prejudice with leave to amend.

    **D.**    **Count III: Pennsylvania Whistleblower Claims**

Defendants also assert that Plaintiff fails to make out a prima facie case under the Pennsylvania Whistleblower Law (PWL). Plaintiff counters that he sufficiently pled his PWL claim because he made several good faith reports of wrongdoing by a public body to his employer and was subsequently fired. We will deny the Motion as to this count for the following reasons.

To prove a cause of action for wrongful discharge under the PWL, a plaintiff must show both a good faith report of wrongdoing and a causal connection between that report and the discharge. 43 Pa. Stat. § 1423(a); *O'Rourke II v. Commonwealth*, 778 A.2d 1194, 1200 (Pa. 2001); *Evans v. Thomas Jefferson Univ.*, 81 A.3d 1062, 1064 (Pa. Commw. Ct. 2013). Plaintiff has sufficiently pled each of these elements here. Plaintiff alleges he complained to Chief Maxey about his unlawful department conduct, unconstitutional conduct, and statutorily prohibited conduct. *See* 43 Pa. Stat. § 1422 (defining wrongdoing as "a violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."). Specifically, Plaintiff pled that he "informed [Chief Maxey] that many of his requests were inappropriate and illegal, objected and took offense to discriminatory comments and actions by [Chief Maxey], and in total at least 8-10 times during his 1-year period of employment expressed opposition to unlawful, discriminatory or unconstitutional actions, gestures or comments by [Chief Maxey.]" (ECF No. 1 ¶ 24.); *see Sukenik v. Twp. of Elizabeth*, 131 A.3d 550, 555 (Pa. Commw. Ct. 2016) (citing *Gray v. Hafer*, 651 A.2d 221, 225 (Pa. Commw. Ct. 1994), aff'd, 669 A.2d 335 (Pa. 1995)) (stating that a "good

faith report" must "provide information that is sufficient to identify the law allegedly violated" and "specify how an employer is guilty of wrongdoing or waste.").

Moreover, the specific conduct attributed to Chief Maxey, when taken as true, certainly constitutes actual and objective violations of both Pennsylvania state law and the Constitution. *See Kimes v. Univ. of Scranton*, 126 F.Supp. 3d 477, 505 (M.D. Pa. 2015) (holding that the conduct reported must constitute an actual and objective violation). The Amended Complaint contains the following allegations of wrongdoing by Chief Maxey: (1) making racist comments, including calling Plaintiff's sister a "traitor" for converting to Islam and lodging racial slurs and derogatory comments about Chinese, African American, and Italian individuals, (2) making sexist comments, including degrading a former female police officer and expressing that women should not be police officers, (3) requiring ticket and arrest quotas, which he called "required contacts," (4) engaging in excessive force and using derogatory language during an arrest of a non-violent recidivist offender, and (5) directing Plaintiff to target certain individuals in the community without reasonable suspicion or probable cause. (Am. Compl. ¶ 18-21.)

Clearly, these actions and comments by Chief Maxey, if true, are unlawful and discriminatory, and Plaintiff telling Chief Maxey that his actions were unlawful and unconstitutional constitutes a good faith report. Furthermore, the temporal proximity between Plaintiff's reports of the behavior, Chief Maxey's continual berating of Plaintiff, and Plaintiff's subsequent firing lead to an inference of causation sufficient to survive this Motion. Viewing the evidence in the light most favorable to the Plaintiff, the facts pled in the Complaint are plausible and support a PWL violation. The Motion is denied as to this count.

E.      **Count IV: Defamation Claims**

Plaintiff also brings defamation claims under Section 1983 Due Process and

Pennsylvania state law.  Defendants move for dismissal.  Defendants also assert a defense to the state law defamation claim under the Political Subdivision Tort Claims Act (PSTCA).  Neither of these claims are sufficiently pled, and both will be dismissed.  The PSTCA applies to the Township, but not to Chief Maxey in his individual or official capacity.  Therefore, the state law defamation claim is dismissed with prejudice as to the Township, but without prejudice as to Chief Maxey in his individual and official capacity.

1.    *Section 1983 Due Process Violation (Defamation)*

Defamation is only actionable under Section 1983 if the plaintiff can make out a due process claim for deprivation of a constitutionally protected liberty interest in his reputation. *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989); *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006).  To do this, plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest; this is known as the "stigma-plus" test.  *Hill*, 455 F.3d at 236; *Thomas v. Indep. Twp.*, 463 F.3d 285, 297 (3d Cir. 2006).   To satisfy the stigma prong in the public employment context, an employee must demonstrate that his employer (a) published (b) a substantially and materially false statement that (c) infringed upon the reputation, honor, or integrity of the employee.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972); *Ersek v. Twp. of Springfield*, 102 F.3d 79, 83-84 (3d Cir. 1996).

Here, Plaintiff has only made conclusory allegations as to the "stigma" prong, which are insufficient to rise to the level of a substantive due process claim.  The Amended Complaint alleges that "upon information and belief" Plaintiff was declined from other jobs "because of false negative statements made by [Chief Maxey] / [the] Township."  (Am. Compl. ¶ 28.)  There is no allegation about what the statements entailed, who made them, or whether they were publicized.  The Complaint merely states that Plaintiff was "denied other police opportunities

and job offers as a direct, proximate and actual cause of false, malicious and improper statements and/or references by Defendants" and these "stigmatizing statements" caused "actual employment opportunities to be lost, denying him liberty and/or property entitlements." (Am. Compl. ¶ 45.) Plaintiff alleges he has suffered reputation, economic, and career losses as a result. (*Id.*) The bare recitation of the elements of the "stigma-plus" test does not state a claim for which relief may be granted under *Twombly* and *Iqbal*. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. Therefore, the Motion will be granted as to this claim.

2.     *State Law Defamation*

In addition, both parties appear to agree that Plaintiff's defamation claim is also brought pursuant to Pennsylvania state law, although the title in the Amended Complaint subsection states that it is "by and through 42 U.S.C. § 1983." (Am. Compl. ¶ 12.) The elements of a defamation claim under Pennsylvania law are set forth by statute. In an action for defamation, the plaintiff has the burden of proving: (1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) The understanding by the recipient of its defamatory meaning, (5) the understanding by the recipient of it as intended to be applied to the plaintiff, (6) special harm resulting to the plaintiff from its publication, and (7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. § 8343(a).

For the same reasons that Plaintiff's claim is insufficient under federal law, Plaintiff has not met his burden under state law either. Plaintiff does not allege who the recipient was or any understanding by said recipient as to the defamatory meaning or intention of the alleged communication. He makes no factual allegations whatsoever as to the content of the statement, the nature of the publication, or the identity of the recipient. To the extent that the defamation claim is brought pursuant to Pennsylvania state law, it must be dismissed. Accordingly, the

fourth cause of action will be dismissed in its entirety.

3.   *The Political Subdivision Tort Claims Act*

The Political Subdivision Tort Claims Act (PSTCA) grants local agencies immunity from "damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. Cons. § 8541.  "Local agency" is defined as "a government unit other than the Commonwealth government." 42 Pa. Cons. Stat. § 8501.  The Township is a "local agency" under the statute.  *Id.* § 8501.  The PSTCA provides eight narrow exceptions to immunity, which are to be strictly construed.  *Id.* § 8542(b); *Walker v. Eleby*, 842 A.2d 389, 392 (Pa. 2004).  Here, the only claim alleged in the Amended Complaint that is a state law tort claim is state law defamation.  Defamation does not fall within any of the eight exceptions to the PSTCA and, therefore, the PSTCA applies.  *See* 42 Pa. Cons. Stat. § 8542(b) (listing exceptions to the PSTCA, in which defamation is not included).  Therefore, to the extent that Plaintiff makes a purely state law claim of defamation against the Township, it is barred by the PSTCA.  Amendment of the claim would be futile.  Dismissal with prejudice is appropriate as to the Township.

Government officials are entitled to immunity to the same extent as their employing agency, so long as the claim is brought under Pennsylvania law for acts performed within the scope of their employment.  42 Pa. Cons. Stat. § 8545; 42 Pa. Cons. Stat. § 8546; *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006).  Employees are immune from liability for conduct they reasonably believe was authorized or required by law, so long as they did not commit willful misconduct.  42 Pa. Cons. Stat. § 8545; 42 Pa. Cons. Stat. § 8546; *Sanford v. Stiles*, 456 F.3d at 315; *Dorsey v. Redman*, 22 A.3d 274, 282-83 (Pa. Cmwlth. 2011).  Pennsylvania courts have defined "willful misconduct" as synonymous with "intentional tort."  *Orange Stones Co. v. City*

16

*of Reading*, 87 A.3d 1014, 1023 (Pa. Cmmw. Ct. 2014) (citing *Lancie v. Giles*, 572 A.2d 827, 830 (Pa. Cmwlth. 1990)).  The only Pennsylvania state law tort claim that is brought against Chief Maxey here is defamation, which is an intentional tort.  Therefore, although Plaintiff's state law defamation claim has been dismissed herein, it is dismissed without prejudice, because the PSTCA does not shield Chief Maxey, in his official capacity, from intentional torts.

> **E.      Counts I & V: Section 1981 as to Chief Maxey and Title VII as to All Defendants**[3]

Plaintiff asserts Title VII and Section 1981 claims against both defendants.  Under Title VII, Plaintiff asserts hostile work environment and retaliation theories.  Plaintiff's Section 1981 claim against the municipality defendants was addressed previously in Section III(A)(1) and dismissed for the reasons stated therein.  We will now address Plaintiff's Section 1981 claim against Chief Maxey in his individual capacity jointly with his Title VII Hostile Work Environment claim, as these claims share the same elements and are analyzed identically at the motion to dismiss stage.  *Hamilton v. City of Philadelphia*, No. 18-5184, 2019 WL 4220899, at *4 (E.D. Pa. Sept. 5, 2019) (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 461 (1975)) (explaining that, although the rights guaranteed by "[Section] 1981 and Title VII 'are separate, distinct, and independent,' with respect to a claim of hostile work environment, both statutes require the same elements."); *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017) (analyzing Title VII Hostile Work Environment and Section 1981 claims under the same

---

[3] Plaintiff's PHRA claims are not ripe, as he has not exhausted his administrative remedies yet.  However, the PHRA is construed consistently with court interpretations of Title VII, meaning that if a plaintiff alleges a valid claim under Title VII, his PHRA claim is also valid.  *See Gomez v. Allegheny Health Servs.*, 71 F.3d 1079, 1083 (3d Cir. 1995); *see also Weston v. Pennsylvania*, 251 F.3d 420, 425 n. 3 (3d Cir.2001) (noting there is an identical analysis under Title VII and PHRA), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996) ("Generally, the PHRA is applied in accordance with Title VII.").

framework at the motion to dismiss stage).  Defendants' additional argument regarding

Plaintiff's Hostile Work Environment claim—that he didn't suffer severe and pervasive

harassment— and the Title VII Retaliation claim will be addressed separately.  For the reasons

that follow, the Motion will be denied as to the Section 1981 claim against Chief Maxey, and

both Title VII claims will also be denied.

>    1.    *Title VII Hostile Work Environment and Section 1981: Membership in a*
>          *Protected Class*

Defendants make a similar argument with regard to both Plaintiff's Title VII Hostile

Work Environment claim and his Section 1981 claim against Chief Maxey.  Namely, they assert

that Plaintiff's claims fail because he does not belong to a protected class (i.e., a racial minority).

As to the Section 1981 claim, Defendants argue that plaintiff has no standing because he is a

non-minority.  As to the Hostile Work Environment claim, Defendants assert that he cannot

prove one of the essential elements—that he suffered intentional discrimination because of his

status in a "protected class."  Although Defendants' basis for dismissal on these claims is

different (standing vs. ability to make out an element of the claim), the essential argument and

analysis is the same: whether Plaintiff can maintain these claims as a non-minority.

>    i.    <u>Applicable Law</u>

In general, a plaintiff has standing to bring a claim if he can show: (1) he has suffered an

"injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural

or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3)

it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81

(2000).

Once standing is established, a plaintiff must then plead and prove the essential elements

of his claims.  The elements of a Section 1981 claim are: (1) plaintiff belongs to a racial

minority; (2) an intent to discriminate on the basis of race by the defendant; and (3)

discrimination concerning one or more of the activities enumerated in Section 1981.  *Pryor v.*

*Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002).  Similarly, to establish a

hostile work environment claim under Title VII, a plaintiff must prove: (1) the employee

suffered intentional discrimination because of his or her protected status; (2) the discrimination

was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the

discrimination would detrimentally affect a reasonable person of the same status in that position;

and (5) the existence of respondeat superior liability.  *Huston v. Procter & Gamble Paper Prods.*

*Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted).

ii.   <u>Membership in a Protected Class</u>

Defendants argue that Plaintiff is unable to maintain his Section 1981 and Hostile Work

Environment claims because he does not belong to a racial minority or other protected class.

Specifically, Defendants suggest that any discriminatory comments or actions by Chief Maxey

were directed at other individuals or groups, not including Plaintiff (a white man) and, because

of this, he cannot show that he suffered discrimination based on a protected characteristic.  We

disagree.

The Third Circuit has held consistently that non-minority plaintiffs can bring claims for

discrimination under both Section 1981 and Title VII if they can establish an injury-in-fact.  *See*

*Angelino v. N.Y. Times Co.*, 200 F.3d 73, 90-92 (3d Cir. 1999) ("We hold that indirect victims of

sex-based discrimination have standing to assert claims under Title VII if they allege colorable

claims of injury-in-fact that are fairly traceable to acts or omissions by defendants that are

unlawful under the statute."); *Liotta v. Nat'l Forge Co.*, 629 F.2d 903, 906-07 (3d Cir. 1980).

Other courts in our district have also held that non-minority plaintiffs have standing to bring such claims. *See, e.g.*, *Carter v. Pennsylvania*, No. 08-5321, 2009 U.S. Dist. LEXIS 89653 at *26 (E.D. Pa. Sept. 28, 2009) (denying motion to dismiss as to Title VII claim as non-minority plaintiffs demonstrated an injury-in-fact); *Witte v. Zoological Soc'y*, No. 06-3878, 2007 U.S. Dist. LEXIS 9107, at *7 (E.D. Pa. Feb. 7, 2007) (holding that non-minority Plaintiff had standing under Section 1981 because he suffered actual harm as a result of racial discrimination).  Many other circuits have similarly held that non-minority plaintiffs have standing in these cases. *See e.g.*, *Richardson v. Restaurant Marketing Associates Inc.*, 527 F.Supp. 690, 694-95 (N.D. Ca. 1981) (finding that a white plaintiff had standing to sue under Section 1981 based on allegation that as a result of defendant's employment practices, including termination of and refusal to hire black workers and racial hostility toward and concerning black workers, "she was denied the benefits of a work environment conducive to interracial harmony and association"); *Clayton v. White Hall Sch. Dist.*, 875 F.2d 676, 679-80 (8th Cir. 1989) (finding standing where plaintiff alleges hostile work environment injury from loss of association with minorities).

Many of these cases were specifically decided in the context of whether a non-minority plaintiff had standing to bring Title VII or Section 1981 claims, yet failed to address the actual elements of these claims, which require the plaintiff to be of a racial minority or have membership in a protected class.[4]  Regardless, the plethora of cases in the Third Circuit and beyond make clear that individuals who fall outside protected classes (i.e., non-minorities) may

---

[4] In a different context within Title VII—Reverse Discrimination cases—Courts have held that the first element, "membership in a protected class" (the same first element as for Hostile Work Environment claims), is met for non-minorities when they "present evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait protected under Title VII."  *Burlington v. News Corp.*, 2015 U.S. Dist. LEXIS 68792, at *13 (E.D. Pa. May 27, 2015) (citing *Iadimarco v. Runyon*, 190 F.3d 151, 161 (3d Cir. 1998).

nevertheless bring claims for discrimination under both Section 1981 and Title VII if they are an "aggrieved person" who alleges an injury-in-fact based upon discrimination, even if that discrimination was aimed at third parties. *See Angelino*, 200 F.3d at 90-92; s*ee also, Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 209-10 (1972) (holding that "person aggrieved" includes those who were not themselves the objects of discrimination but were nevertheless injured by "the loss of important benefits from interracial association."); *see also Carter*, 2009 U.S. Dist. LEXIS 89653, at *26; *Witte*, 2007 U.S. Dist. 9107, at *7. The Defendants have cited no cases, and we have found none, that hold otherwise in cases analogous to this one. We are therefore satisfied that these cases are sufficient to support a finding that Section 1981 and Title VII "provide[] a remedy for any person that has suffered actual harm as a result of racial discrimination, even if the discrimination was directed at a third party of a different race." *Witte*, 2007 U.S. Dist. LEXIS 9107, at *10.

This is the case for the Plaintiff here. He has demonstrated a plausible injury-in-fact and adequately alleged that he is an "aggrieved person" injured by discrimination in his workplace. Plaintiff alleges that he has suffered actual harm from Chief Maxey's continual discriminatory comments made in his presence, including comments regarding Plaintiff's Muslim sister. He also alleges that he suffered an inability to have a diverse workforce based upon Chief Maxey's discrimination toward racial minorities and women. Finally, Plaintiff asserts that his complaints of this conduct by Chief Maxey caused him to be fired. The Amended Complaint sets forth a plausible injury-in-fact caused by the alleged discriminatory conduct of Chief Maxey. Plaintiff has sufficiently alleged that he is an "aggrieved person" injured by discrimination in his workplace. Therefore, he can maintain his Title VII Hostile Work Environment claim and Section 1981 claim against Chief Maxey at this juncture. The Motion will be denied as to these

counts.

2.      *Title VII Hostile Work Environment: Severe and Pervasive Harassment*

In addition to the "membership in a protected class" argument, Defendants also assert

that Plaintiff's Title VII Hostile Work Environment claim should be dismissed because he fails

to allege that the harassment was severe, pervasive, or regular and that this harassment was

"because of" his protected characteristics.  However, "determining whether harassing conduct is

sufficiently severe or pervasive is a highly fact-intensive inquiry."  *Ingram v. Vanguard Grp,*

*Inc.*, No. 14-3674, 2015 U.S. Dist. LEXIS 93016, at *53 (E.D. Pa. July 17, 2015).  Courts have

continually "shown a reluctance to dismiss a complaint at the [motion to dismiss] stage when the

primary challenge to the hostile work environment claim is whether or not the conduct in

question is severe and/or pervasive."  *Id*. at *53-54; *Long v. Pizza Hut*, No. 03-0738, 2003 U.S.

Dist. LEXIS 23194, at *4 (W.D. Pa. Nov. 5, 2003) (citing *Harris*, 510 U.S. at 23-24).

Here, Plaintiff alleges that he was subjected to "(a) a barrage of continued yelling; (b)

daily and weekly disparaging comments; (c) demeaning directives; and (d) he received relatively

absurd discipline on a continual basis."  (Am. Compl. ¶ 26.)  Plaintiff further alleges that Chief

Maxey acted in this manner because he perceived Plaintiff as "lacking in loyalty and having the

do-anything requested mentality" after Plaintiff spoke up regarding his discriminatory

comments.  These allegations survive at the motion to dismiss stage because determining

whether the harassment at issue was "severe or pervasive" is a fact-intensive inquiry which is

better resolved at the summary judgment stage.   *Ingram*, 2015 U.S. Dist. LEXIS 93016, at *54.

Therefore, this Motion is denied as to the Title VII Hostile Work Environment claim.

3.      *Title VII: Retaliation*

Plaintiff also brings his Title VII claim under a retaliation theory.  A Title VII Retaliation

22

claim consists of the following three elements: "(1) [the plaintiff] engaged in protected activity; (2) [the plaintiff] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Groeber v. Friedman & Schuman*, P.C., 555 F. App'x 133, 135-36 (3d Cir. 2014).

In this matter, Defendants argue that Plaintiff insufficiently alleged a causal connection between his protected activity and the adverse employment actions. We disagree. A plaintiff can show causation through "unusually suggestive temporal proximity" or a "pattern of antagonism" that sheds light on the "timing of events" to infer causation. *Curley*, 816 F. App'x at 674. Further, causation may generally be "gleaned from the record as a whole." *Vaticano*, 514 F. App'x at 225.

Here, the Amended Complaint alleges that Plaintiff was retaliated against by way of discipline, hostility, termination, and negative references for objecting to discriminatory comments and directives. (Am. Compl. ¶ 49.) Plaintiff also alleges that he "informed [Chief Maxey] that many of his requests were inappropriate and illegal, objected and took offense to discriminatory comments and actions by [Chief Maxey], and in total at least 8-10 times during his 1-year period of employment expressed opposition to unlawful, discriminatory or unconstitutional actions, gestures or comments by [Chief Maxey]." (*Id.* ¶ 24.) As a result, Plaintiff alleges he "was subjected to: (a) a barrage of continued yelling; (b) daily and weekly disparaging comments; (c) demeaning directives; and (d) he received relatively absurd discipline on a continual basis." (*Id*. at ¶ 26.) Plaintiff finally alleges that he was suddenly terminated for a nonsensical reason after only working there for one year. (*Id*. at ¶ 27.) These allegations raise a "suggestive temporal proximity" between Plaintiff's complaints and his firing. Further, Chief Maxey's pattern of continually berating Plaintiff and ultimately firing him make it plausible that

23

causation exists between these events, when viewing the record as a whole.  Therefore, the

Motion will be denied as to this Count as well.

### H.    Punitive Damages

Defendants finally argue that Plaintiff has not sufficiently stated a claim for punitive

damages.  Courts typically decline to dismiss a claim for punitive damages prior to discovery.

*See, e.g., Castelli-Velez v. Moroney*, No. 20-976, 2021 WL 978814, at *4 (M.D. Pa. Mar. 16,

2021) ("Indeed, it would be premature to delve into the factual determinations required for an

award of punitive damages at the motion to dismiss stage."); *White v. Bush*, No. 20-2059, 2021

WL 2255981, at *10 (E.D. Pa. June 3, 2021) (collecting cases and finding that defendants failed

to cite any case where a court dismissed a plaintiff's request for punitive damages at the motion

to dismiss stage); Tucker *v. Horn*, No. 16-71, 2016 WL 4679018, at *4 (M.D. Pa. Sept. 7, 2016)

("Because Plaintiffs' claim for punitive damages rests on allegations of outrageous and reckless

conduct, and it would be premature to dismiss the demand prior to discovery . . . [the motion]

will be denied.").

Plaintiff seeks punitive damages based on Defendants "willful, deliberate, malicious, and

outrageous conduct."  (Am. Compl. ¶ D.)  However, punitive damages are unavailable against

municipal defendants as a matter of law.  *See, e.g., City of Newport v. Fact Concerts, Inc.*, 453

U.S. 247, 271 (1981); *Smith v. Borough of Dunmore*, 633 F.3d 176, 183 (3d Cir. 2011);

*Strickland v. Mahoning Twp.*, 647 F. Supp. 2d 411, 428 (M.D. Pa. 2009).  Official capacity suits

are treated as suits against the municipality.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Therefore,

all punitive damages claims against the Township and Defendant Maxey in his official capacity

will be dismissed.  However, we will not dismiss the punitive damages claim against Chief

Maxey in his individual capacity at this early stage of litigation.  Plaintiff has alleged outrageous

conduct on behalf of Chief Maxey in the underlying First Amendment Retaliation, Title VII, and

Section 1981 and 1983 claims.  Dismissal of punitive damages against Chief Maxey is premature

at this juncture.

### I.      Leave to Amend

"[I]n civil rights cases[,] district courts must offer amendment—irrespective of whether it

is requested—when dismissing a case for failure to state a claim unless doing so would be

inequitable or futile."  *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247,

251 (3d Cir. 2007); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (finding a court

must allow amendment in civil rights cases unless it would be inequitable or futile).  Even in the

case of dismissal for lack of standing, leave to amend may be granted at the court's discretion.

*Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J.*, 907 F.2d 1408, 1416-17 (3d Cir. 1990).

We have dismissed the following counts: Section 1981 claim against the municipal

defendant, Section 1983 claim against the Township, Section 1983 defamation claim against

both defendants, First Amendment Retaliation against Chief Maxey, and state law defamation

claim against both defendants.  Each of these claims are dismissed without prejudice, with the

following exceptions: (1) Plaintiff's state law defamation claim against the Township, which is

dismissed with prejudice pursuant to the PSTCA, and (2) the Section 1981 claim against the

Township, as amendment would be futile.

### IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion is granted in part and denied in part as

follows.  Count I is granted in part and denied in part: Plaintiff's Section 1981 claim is dismissed

without prejudice against the municipal defendant, but the Section 1981 claims against the

individual defendant remains.  Plaintiff's Section 1983 claim against the Township is also dismissed without prejudice.  Count II (First Amendment Retaliation) against Chief Maxey in his individual capacity is also dismissed without prejudice.  The Moton is denied as to Count III (Pennsylvania Whistleblower Law).  Regarding Count IV (defamation), the Motion is granted as to the Section 1983 defamation claim, which is dismissed without prejudice as to both Defendants.  The Motion is granted as to the Pennsylvania state law defamation claim, which is dismissed with prejudice as to the Township only and without prejudice as to Chief Maxey in his individual and official capacity.  The Motion is denied as to Count V (Title VII).  Plaintiff's request for punitive damages is dismissed against the municipal Defendant and remains against Chief Maxey in his individual capacity.  An appropriate Order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**